TONY SAPPINGTON, Plaintiff-in-Error, v. MRS. LESLIE KILAVOS, Defendant-in-Error.—356 S. W. (2d) 602.

Western Section at Jackson. January 17, 1961.

Petition for Certiorari Denied by Supreme Court, July 26, 1961.

George LaManna, Chiapella & Parish, Memphis, for plaintiff in error.

Nelson, Norvell & Floyd and Albert T. McRae, Memphis, for defendant in error.

CARNEY, J. The jury below returned a verdict for $5,000 for personal injuries in favor of the cross-plaintiff, Tony Sappington, against the cross-defendant, Mrs. Leslie B. Kilavos. Upon motion for a new trial His Honor the Trial Judge reduced the amount of the verdict from $5,000 to $1,000 by way of remittitur which cross-plaintiff, Tony Sappington, accepted under protest and brought his appeal in error to this court as authorized by T. C. A. Section 27-118.

Plaintiff-in-error, Tony Sappington, was a truck driver employed by the Kroger Company and was proceeding from the warehouse in Memphis, Tennessee, with a load of groceries and other merchandise to various points in Mississippi when the big tractor-trailer which he was driving collided with an automobile driven by the defendant-in-error, Mrs. Leslie B. Kilavos. The accident occurred about 4:00 A.M. December 14, 1957, on a concrete bridge some distance outside the Memphis city limits but within Shelby County, Tennessee.

Mrs. Kilavos sued the Kroger Company and Mr. Sappington for $35,000 damages for personal injuries, medical expenses and property damage. Mr. Sappington filed a cross-action against Mrs. Kilavos for $25,000 damages for personal injuries, medical expenses and lost wages.

In the original suit by Mrs. Kilavos against the Kroger Company and Mr. Sappington the jury returned a verdict in favor of the defendants and no appeal has been taken by Mrs. Kilavos from the judgment against her. The Trial Judge approved the verdict in favor of Mr. Sappington against Mrs. Kilavos on the cross-action

in so far as the liability of Mrs. Kilavos is concerned and he expressed his disapproval of the $5,000 verdict by suggesting a remittitur of $4,000. The only question on this appeal is the action of the Trial Judge in suggesting the remittitur.

Mr. Sappington testified that at the time of the collision the truck seat came loose and he sustained a bruise on his head, an injury to his finger and a blow to his abdomen from the steering wheel when he was thrown about in the cab of his big truck by the impact. Mr. Sappington did not think that he was seriously hurt, drove on to Starkville, Mississippi, where he called the Memphis office to send a replacement tractor because the wheels on his tractor were somewhat out of alignment.

After receiving the replacement tractor Mr. Sappington proceeded on his route to a truck stop and cafe near Tupelo, Mississippi, some 100 miles from Memphis. As he was drinking some coffee in this truck stop blood began gushing out of his mouth and he was carried to a hospital in New Albany, Mississippi. After a stay of a few hours in New Albany, Mississippi, Mr. Sappington was transferred by ambulance to the Methodist Hospital in Memphis, Tennessee, where he stayed one night and was treated by Dr. Murray Davis and Dr. Nicholas Gotten. X-rays were taken of Mr. Sappington's lumbar spine, chest, pelvis and abdominal region. The next day, December 15, Mr. Sappington was transferred to the Baptist Hospital for examination and treatment by Dr. Brock who regularly attended Kroger employees.

The records of the Baptist Hospital show that at the time Mr. Sappington was admitted he was spitting up

blood and also was discharging blood in his urine. He was complaining a great deal of pain and suffering, also he experienced difficulty in voiding his urine and the hospital records showed that he received considerable sedation during his stay. On the night of December 21, 1957, while under sedation he fell off the bed in the hospital and a report of this fall was made on the hospital records. The next day he was discharged from the hospital.

During this stay in the Baptist Hospital from December 15 through December 22, 1957, numerous tests were run including a pneumo-encephalogram, sometimes called a spinal tap.

At the time the plaintiff-in-error, Mr. Sappington, was discharged he was still complaining of supra-pubic pain, backache, nausea, headache, difficulty in voiding of his urine and difficulty with his bowel movement. Upon Dr. Brock's instruction he went back to work on January 14, 1958, worked one day and went back to Dr. Brock with substantially the same complaints enumerated above. At Dr. Brock's suggestion the plaintiff re-entered Baptist Hospital on January 16, 1958, where he had additional tests including a pyelogram and a gastro-intestinal series of studies.

Mr. Sappington was released on January 18 and January 21 he consulted Dr. Raskind, another neuro-surgeon. While in Dr. Raskind's office the plaintiff began vomiting again and upon Dr. Raskind's insistence he was re-admitted to the Baptist Hospital. Dr. Raskind also ran a series of tests including an electro-encephalogram which is a brain wave study as well as tests for trouble in the gall bladder and intestinal tract. After checking

the records of the Baptist Hospital, Drs. Brock and Raskind came to the conclusion that plaintiff-in-error was suffering from a duodenal ulcer which had been diagnosed as far back as 1952.

Mr. Sappington testified at the time of the trial he was still having excruciating headaches and that in substance the condition of his ulcerated stomach had been aggravated by the accident. He enumerated the following doctors' and hospital bills, etc. which he incurred as a result of the injuries he sustained in the wreck with Mrs. Kilavos:

"Baptist Hospital, $235.47, Jack Ruby Ambulance, $15.10, Doctor Nicholas Gotten, $25.00, Doctor Murray Davis, $45.00, Doctor Willis, $7.50, Doctor Kelly, and Doctor Brock, $170.00, Doctor Gotten, $50.00, Methodist Hospital, $32.00, Baptist Hospital, $323.25, Doctor Raskind, $160.00, Baptist Memorial Hospital, $81.38, a total of $1,144.70 * * *."

These bills were paid by the Kroger Company or its workmen's compensation insurance carrier.

Also he contended that he lost 12½ weeks work from December 14, 1957, to March 16, 1958, at the rate of $95.00 per week or the total of $1,187.50 making a total of $2,332.20 special damages.

Mr. Sappington did not introduce any medical testimony concerning his injuries and the cross-defendant, Mrs. Kilavos, introduced the deposition of Dr. Brock. The substance of Dr. Brock's testimony is that the cross-plaintiff did not tell him about having had a duodenal ulcer and that all the many tests including the very painful spinal tap which cross-plaintiff had to undergo would

have been unnecessary had he done so. Dr. Brock admitted that the spinal tap was very painful and often resulted in recurring headaches to the patient.

Mr. Sappington introduced the records of the Baptist Hospital which were all collected in one unit under his name. This testimony showed that plaintiff-in-error was first admitted to the Baptist Hospital on June 15, 1952, and discharged June 18, 1952; his attending physician was Dr. Ira Parks who is now dead and that Dr. Parks diagnosed plaintiff-in-error's ailment as an active duodenal ulcer with symptoms of nausea and pain located in the right upper gastrum. His next admission was February 25, 1953; his physician was Dr. Poole and the diagnosis was duodenal ulcer with vomiting and passing of blood in the fecal matter.

Again on September 13, 1953, he was admitted and discharged September 18, 1953, and on May 26, 1954, and discharged May 28, 1954, both times attended by Dr. Poole with a diagnosis of gastritis, with symptoms of nausea and spitting up of blood, however the patient continued to work. On April 23, 1956, he was admitted to the Baptist Hospital and again discharged on April 28, 1956, and treated by Dr. Pridgen and consultation by Dr. Spiotta. The diagnosis was possible duodenal ulcer. The record further stated that the patient sustained gnawing pain in the stomach which was relieved by milk and that onion, pepper, cabbage, pork and highly seasoned foods caused upset.

Then, of course, the next record was the admission on December 15, 1957, after the collision with Mrs. Kilavos.

Dr. Brock testified that the plaintiff-in-error never told him about being in the hospital in 1956 under the care of Dr. Pridgen but that he did tell him about being in the hospital under Dr. Poole and that he, Dr. Brock, got permission from the plaintiff to check Dr. Poole's record which he did. Dr. Brock did not check the records of the Baptist Hospital which, of course, would have revealed the record of the treatment by Dr. Pridgen. Dr. Brock testified that he did not learn about the hospitalization in 1956 and treatment by Dr. Pridgen until Dr. Pridgen saw Dr. Raskind in the x-ray department and told him about his treatment of Mr. Sappington. Dr. Brock testified that he thought that the plaintiff-in-error deliberately withheld this information about Dr. Pridgen's treatment from him.

Mr. Sappington denied that he deliberately withheld such information; that he was in severe pain and told him about Dr. Poole's treating him for a duodenal ulcer and that his failure to mention Dr. Pridgen was unintentional.

Finally, Dr. Brock testified that in his opinion plaintiff's duodenal ulcer was in no worse condition at the time of the trial than it was before the accident with Mrs. Kilavos. He did not refute plaintiff's testimony that he continued to suffer from extreme recurring headaches at the time of the trial which had continued ever since the spinal tap.

From our reading of Dr. Brock's testimony, if he was not hostile to Mr. Sappington, he certainly made no effort to favor him at all in his testimony. Dr. Brock offers no explanation of his failure to read Mr. Sappington's record at the Baptist Hospital even though he was

apprised that Dr. Poole had treated the plaintiff in the Baptist Hospital. Of course, a reading of that record would have revealed to him that Dr. Pridgen had treated Mr. Sappington in 1956 for possible duodenal ulcer. Dr. Brock did admit that a blow on the abdomen such as the plaintiff, Sappington, contended he received in the accident, probably by the steering wheel, could have aggravated a duodenal ulcer.

From our review of the entire evidence we are of opinion that His Honor the Trial Judge was in error in suggesting such a large remittitur. If the jury believed the plaintiff, and apparently they did, then they could have found that the plaintiff was suffering from recurring severe headaches as a result of the spinal tap which is partially corroborated by the testimony of Dr. Brock; they could have found that his duodenal ulcer was aggravated by the blow which he received in the accident which is partially corroborated by the testimony of Dr. Brock that it might have been so aggravated; they could have found that plaintiff sustained some $1,100.00 in special damages from loss of wages; and they could have found that he sustained great pain and suffering during his periods of hospitalization and treatment.

In our opinion a remittitur of only $1,500 would have been more nearly correct. Accordingly, under the authority of Murphy Truck Lines v. Brown et al., 203 Tenn. 414, 313 S. W. (2d) 440, the assignment of error will be sustained and $2,500 of the remittitur will be restored. Judgment will be entered in this court in favor of the plaintiff-in-error, Tony Sappington, for $3,500 drawing interest at 6% per annum only from the date of entry of such judgment. The defendant-in-error, Mrs. Kilavos,

will be taxed with the costs in the court below and in this court.

Avery, P. J. (W. D.), and Bejach, J., concur.